UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 2: 97-071-DCR-2 |
| | ) | |
| V. | ) | |
| | ) | |
| LOIS JOCHINTO ORTA, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

*** *** *** ***

On December 12, 1998, Defendant Lois Orta was convicted following a jury trial of one count of conspiring to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846 (Count 1), and three counts of aiding and abetting possession with intent to distribute methamphetamine in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1) (Counts 3, 5, and 6). [Record Nos. 356 and 626, p. 1] He was sentenced on March 11, 1999, by United States District Judge William O. Bertelsman to life imprisonment on Counts 1, 3, and 5 and 360 months' imprisonment on Count 6, as well as 8 years of supervised release. [Record No. 356]

Orta has filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), asserting that various "extraordinary and compelling reasons," as well as the 18 U.S.C. § 3553(a) factors, warrant release from prison or a lesser sentence. [Record No. 680] The United States opposes any sentence reduction. [Record No. 682]

After a careful review of the record and the parties' arguments, the Court agrees with the United States. The motion will be denied for the reasons set forth below.

## I. Legal Standard

A district court conducts a three-step inquiry in determining whether a sentence reduction is appropriate under § 3582(c)(1)(A)(i). Before granting relief, the court must: (1) find that extraordinary and compelling reasons warrant a sentence reduction"; (2) ensure that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) consider all relevant sentencing factors listed in 18 U.S.C. § 3553(a). *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (cleaned up) (quoting *United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020)). "Congress provided no statutory definition of 'extraordinary and compelling reasons,' instead delegating that task to the [United States] Sentencing Commission." *Id.* (citing 28 U.S.C. § 994(t)).

Prior to implementation of the First Step Act of 2018, the Sentencing Commission issued U.S.S.G. § 1B1.13, a policy statement with Application Notes that prescribe categories of "extraordinary and compelling reasons" for a sentence reduction. *See id.*; U.S.S.G. § 1B1.13 n. 1. But this is "not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions." *Elias*, 984 F.3d at 519. Thus, "district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Id.* at 519-20 (citations omitted).

"But the mere fact that defining *extraordinary and compelling* 'is left to the district court's discretion . . . does not mean that no legal standard governs that discretion.'" *United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021) (emphasis in original) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005)). Instead, courts look to the "ordinary meaning [of the terms] at the time Congress enacted the statute." *Id.* Using this method, "extraordinary" for the purposes of the statute means "most unusual," "far from common," and

"having little or no precedent." *Id.* (quoting Webster's Third New International Dictionary: Unabridged 807 (1971)). And "compelling" means "forcing, impelling, driving." *Id.* (quoting Webster's Third New International Dictionary: Unabridged at 463).

Additionally, a court may "permissively consider" the § 1B1.13 policy statement "as part of its discretionary inquiry into whether a case presents extraordinary and compelling reasons for release." *United States v. Tomes*, 990 F.3d 500, 503 n. 1 (6th Cir. 2021). Accordingly, the policy statement, while nonbinding, can be useful in evaluating the parties' arguments when a defendant alleges extraordinary and compelling reasons that relate to its provisions. *See*, *e.g.*, *United States v. Gibson*, No. 5: 14-074-DCR, 2021 WL 4768244, at *2 (E.D. Ky. Oct. 12, 2021).

## II. Alleged Extraordinary and Compelling Reasons for Relief

### A. General Health and Age

Orta claims that he suffers a host of health problems, including: bundle branch block, cardiac dysrhythmia, LTBI (a latent tuberculosis infection), hyperlipidemia, depression, anxiety, severe headaches and migraines, a deviated nasal septum, chronic apical periodontitis, cataracts, hypermetropia, myopia, tinnitus, chronic sinusitis, chronic tonsillitis and adenoiditis, gastroesophageal reflux disease, reflux esophagitis, aphagia with an h. pylori infection, breathing problems, severe joint and back pain, and "several others." [Record No. 680, p. 1] He primarily contends that relief is warranted given his particular risk of contracting a serious case of COVID-19, but he also generally argues that his "health is deteriorating due to his old age and medical conditions." [*Id.* at pp. 1-2.]

The United States acknowledges that Orta has, or had, many of these conditions. [Record No. 682, pp. 6-7] However, it points out that his medical records indicate that many have been resolved or are in remission. [*Id.*]

The medical records note that Orta's heart problems (bundle branch block and cardiac dysrhythmia) are in remission. [Record No. 682-3, p. 80] As is, *inter alia*, his reflux esophagitis. [*Id.*] Multiple conditions have also been resolved, including: "common migraine"; shoulder, ankle, and foot joint pain; and an unspecified back ache. [*Id.*]

The Bureau of Prisons ("BOP") lists several of the conditions Orta discusses as "current" ailments, including: hyperlipidemia; a deviated nasal septum; LTBI; anxiety; headaches; chronic sinusitis; hypermetropia; myopia; tinnitus; cataracts; chronic periodontitis; aphagia with an h. pylori infection; chronic tonsillitis and adenoiditis; and gastroesophageal reflux disease. [*Id.* at p. 79.] It has prescribed omeprazole to treat Orta's gastroesophageal reflux disease, pravastatin to treat hyperlipidemia, Buspar to treat anxiety, Flonase to treat sinusitis, antibiotics to treat tonsillitis and adenoiditis, ibuprofen to treat a flareup of periodontitis, and analgesics to treat headaches. [*Id.* at pp. 1-2, 64-65, 84.] Additionally, the BOP has assessed his aphagia with h. pylori using an x-ray and managed his eye problems during optometry appointments. [*Id.* at p. 65; Record No. 682-2, pp. 5-6.] The BOP has also monitored his LTBI condition, which apparently existed prior to incarceration on the instant charges.[1] [*Id.* at p. 63.]

---

[1] "[F]acts that existed at sentencing cannot later be construed as 'extraordinary and compelling reasons' to reduce a final sentence." *Hunter*, 12 F.4th at 570. Regardless, the BOP appears to have monitored and effectively managed Orta's preexisting LTBI.

A review of the defendant's medical records leads to the conclusion that most, if not all, of his current medical conditions involve only sporadic symptoms. They vary in seriousness, but it appears that the BOP has treated all of them when necessary. Orta may dispute the quality of care provided by the BOP, but he is "entitled to adequate medical care, not the best care possible." *Rhinehart v. Scutt*, 894 F.3d 721, 750 (6th Cir. 2018) (citing *Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005)). Here, the medical records suggest that the BOP has provided adequate care.

And the defendant's health has not "deteriorated" significantly. Many of his conditions are in remission or have been resolved, and his conditions listed as "current" do not present any concerning problems at this time. He may suffer future complications from some of his conditions, but the BOP has proven capable of managing them. In short, none of his conditions are "extraordinary" or "compelling" as those terms are generally used in the compassionate release statute.

Moreover, the § 1B1.13 policy statement is useful in these circumstances. The Application Notes to the policy statement provide that the medical condition of a defendant is an extraordinary and compelling reason for relief where, *inter alia*: (1) the defendant has a terminal illness; or (2) the defendant suffers from a "from a serious physical or medical condition" or "deteriorating physical or mental health because of the aging process" which "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 n. 1(A)(i)-(ii). For the reasons discussed above, Orta does not meet these criteria.

Finally, the defendant asserts that his age (58 years old) supports relief. But again, the policy statement is instructive. It provides that the age of the defendant is an extraordinary and compelling reason where "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." The defendant does not meet the first two criteria. Moreover, Orta's age is not so advanced to be "extraordinary" or "compelling" under § 3582(c)(1)(A)(i), regardless of whether one considers it in conjunction with his medical conditions.

Thus, the defendant's general health and age-related arguments fail to state extraordinary and compelling reasons for release or a sentence reduction. The motion will be denied to the extent relief is sought on these grounds independent of COVID-19.

**B. COVID-19 Concerns**

Orta also argues that several of the medical conditions cited above, as well as his history of smoking, put him at risk of contracting a severe case of COVID-19. [Record No. 680, pp. 1-2, 8.] He specifically cites concerns about the Omicron variant and its subvariant, BA.2. [*Id.* at p. 2.] But as the government points out [Record No. 682, pp. 7-8], the United States Court of Appeals for the Sixth Circuit has effectively foreclosed this line of argument.

The Sixth Circuit has held that "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction." *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) (citing *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021)). This holding has subsequently been applied in cases involving defendants with health conditions that elevate their risk of contracting a serious case of COVID-19. *See*

*United States v. Justice*, No. 21-5841, 2022 WL 672277, at *1-2 (6th Cir. Feb. 28, 2022) (unpublished order); *United States v. Traylor*, 16 F.4th 485, 486-87 (6th Cir. 2021). The Sixth Circuit has also applied *Lemons* after Omicron and its subvariants became prevalent.[2] *See, e.g.*, *United States v. Mathews*, No. 21-1697, 2022 WL 1410979, at *2 (6th Cir. Apr. 4, 2022) (unpublished order); *Justice*, No. 21-5841, 2022 WL 672277, at *1-2; *United States v. Kennedy*, No. 21-2675, 2022 WL 43187, at *2-3 (6th Cir. Jan. 5, 2022) (unpublished).

Orta's immunization record indicates that he has received two doses of the Pfizer-BioNTech vaccine. [Record No. 682-5] And if he desires further protection from infection, he may obtain a booster dose from the BOP. *See COVID-19 Vaccine Implementation*, BUREAU OF PRISONS, https://www.bop.gov/coronavirus/index.jsp (last visited May 17, 2022) ("Vaccine doses are available at each location for newly-admitted and existing inmates. Inmates have also been offered booster shots in accordance with CDC guidance.") (emphasis omitted).

Moreover, the defendant is currently incarcerated at FCI Mendota. *See Find an Inmate*, BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited May 17, 2022). FCI Mendota has *zero* active COVID-19 cases among inmates and staff. *See COVID-19 Cases*, BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited May 17, 2022). Thus, Orta has little chance of contracting the virus in the near future.

---

[2] Omicron variant cases surged in December 2021, and BA.2 subvariant cases have proportionally increased since March 2022 to become the predominant strain of COVID-19. *See* Kathy Katella, *Omicron, Delta, Alpha, and More: What To Know About the Coronavirus Variants*, YALE MEDICINE (Apr. 20, 2022), https://www.yalemedicine.org/news/covid-19-variants-of-concern-omicron (last visited May 17, 2022); *Variant Proportions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://covid.cdc.gov/covid-data-tracker/#variant-proportions (last visited May 17, 2022).

For these reasons, the defendant's COVID-19 arguments will be rejected. The motion will be denied insofar as it seeks relief on these grounds.

**C. Family Circumstances**

Next, Orta asserts that his family circumstances support relief. He specifically argues that, over the past twenty-five years of incarceration, "he has lost so many family members," including grandchildren. [Record No. 680, p. 2] He claims that he "needs a second chance with his family." [*Id.*]

Again, § 1B1.13 is useful in addressing this argument. This section of the guidelines addresses two family circumstances that can constitute extraordinary and compelling reasons: (i) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children"; or (ii) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 n. 1(C). Needless to say, Orta's alleged circumstances do not meet these criteria.

His wish to spend more time with his family is also generally not "extraordinary" because it is common for an inmate to desire to spend more time with his family. *See*, *e.g.*, *United States v. Dukes*, No. 2: 10-078-DCR, 2022 WL 1478193, at *2 (E.D. Ky. May 10, 2022); *United States v. Gibson*, No. 5: 14-074-DCR, 2022 WL 895163, at *5 (E.D. Ky. Mar. 21, 2022). Similarly, defendants serving lengthy prison sentences will almost inevitably see the loss of loved ones while incarcerated. While unfortunate, Orta's family circumstances do not present grounds for relief.

**D. Nonretroactive Changes in Sentencing Law and Rehabilitation**

Finally, Orta argues that he would not have received a life sentence if he were sentenced today. [Record No. 680] He claims that a change in the relevant sentencing law supports a

finding of "extraordinary and compelling reasons" when considered alongside his other arguments, including his alleged rehabilitation.[3] [*Id.* at pp. 5-7.] Regarding rehabilitation, Orta claims that he has: obtained a GED; completed psychology, adult continuing education, and residential drug abuse treatment courses and programs; worked in UNICOR for twenty-two years; regularly practiced religion "which has helped him to become a better person"; and only received a minor (unspecified) disciplinary infraction while incarcerated.[4] [*Id.* at pp. 3, 7.]

Some background on this sentencing argument is appropriate. Orta's conviction on Count 1 involved 56.5 pounds of methamphetamine, while Counts 3 and 5 involved 29.5 pounds of methamphetamine. [Record No. 626, p. 1] Orta also has two prior felony drug convictions for selling crack cocaine in California, both of which resulted in 180-day sentences. [*Id.* at ⁋⁋ 48-51.] When he was sentenced for the instant offenses, Counts 1, 3 and 5 carried mandatory life sentences based on the quantities of methamphetamine involved and the fact that the defendant has "two or more prior convictions for a felony drug offense." *See* 21 U.S.C. § 841(b)(1)(A) (1998).

Orta previously moved for a sentence reduction on January 17, 2022. [Record No. 647] At that time, the defendant argued, *inter alia*, that relief was appropriate in light of Section 401(a) of First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5220, which amended

---

3 "Congress was emphatically clear that rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Hunter*, 12 F.4th at 572 (cleaned up) (citing 28 U.S.C. § 994(t)). Thus, the Court does not consider whether the defendant's alleged rehabilitation is an independent reason for relief.

4 Orta's pending motion and its attachments do not document his rehabilitation claims, although he has produced some exhibits regarding his prison education and work history in a filing relating to a prior motion. [*See* Record No. 647-1.]

§ 841(b)(1)(A). [*See id.*] The relevant portion of the statute now requires a 25-year minimum term of imprisonment after two or more "prior convictions for a serious drug felony." 21 U.S.C. § 841(b)(1)(A) (2018). To qualify as a "serious drug felony," an offense must, *inter alia*, be one for which "the offender served a term of imprisonment of more than 12 months." 21 U.S.C. § 802(58). Orta's prior convictions would not be serious drug felonies if he were sentenced today because he did not serve the requisite period of imprisonment for either offense, but Section 401(a)'s revisions to § 841(b)(1)(A) do not apply retroactively to defendants sentenced prior to its enactment. *See* Pub. L. No. 115-391, § 401(c), 132 Stat. 5194, 5221; *accord*, *e.g.*, *United States v. Wills*, 997 F.3d 685, 688 (6th Cir. 2021) (amended order). For this reason, the Court declined to grant relief. [Record No. 656]

In the pending motion, Orta cites a number of cases in support of the proposition that the Court may consider a nonretroactive change in sentencing law when paired with other arguments as a part of its "extraordinary and compelling reasons" analysis, including two from the Sixth Circuit, *United States v. McCall*, 20 F.4th 1108 (6th Cir. 2021), and *United States v. Owens*, 996 F.3d 755 (6th Cir. 2021).[5] [Record No. 680, pp. 5-6] But there are several problems with this argument.

[5] The defendant's argument on this point is somewhat difficult to follow. He clearly contends that he does not have the two "serious drug felony" convictions now required for the revised statutory enhancement, which he characterizes as a "career offender provision." [Record No. 680, p. 5] It is not clear, however, whether he also asserts that he would not be deemed a career offender under U.S.S.G. § 4B1.1 if he were sentenced today. If he does, he has not developed this ambiguous argument. And at any rate, the United States cogently observes that his life sentence was dictated by statute, not the Guidelines' career offender provision. [Record No. 682, p. 9]

First, the *McCall* decision has been vacated pending rehearing *en banc*. 29 F.4th 816 (6th Cir. 2022). Thus, it is not binding precedent. *See Resurrection School v. Hertel*, No. 21-1699, 2022 WL 332400, at *2 (6th Cir. Jan. 11, 2022) (unpublished order). And there is binding precedent that precludes a finding of extraordinary and compelling reasons based on Section 401(a)'s nonretroactive changes to § 841(b)(1)(A). *See Tomes*, 990 F.3d at 505; *see also Wills*, 997 F.3d at 687-88. *Tomes* notably involved a defendant who, like Orta, raised other grounds for relief in addition to the claim that his sentence would now be different given the changes Section 401(a) made to § 841(b)(1)(A). *See Tomes*, 990 F.3d at 501; *see also United States v. Jarvis*, 999 F.3d 442, 446 (6th Cir. 2021) (observing that "[a] faithful reading of *Tomes* . . . leads to just one conclusion: that it excluded non-retroactive First Step Act amendments from the category of extraordinary or compelling reasons, whether a defendant relies on the amendments alone or combines them with other factors.").[6]

The Sixth Circuit issued *Owens* and *McCall* after *Tomes*, and the earlier case controls. *See United States v. McKinnie*, 24 F.4th 583, 589-90 (6th Cir. 2022); *Jarvis*, 999 F.3d at 445-46. Thus, the nonretroactive change in sentencing law cited by Orta cannot serve as an extraordinary and compelling reason for relief, independently or in conjunction with his other arguments.

But even assuming the First Step Act's amendment to § 841(b)(1)(A) *could* constitute a reason for relief when considered in conjunction with other factors, it does not justify a sentence reduction in *this* case. The change in sentencing law is not itself "extraordinary" or "compelling." The "ordinary practice in federal sentencing law is to apply new penalties to

[6] *Jarvis* clarifies that the defendant in *Wills* also raised other grounds for relief, even though the appellate opinion did not discuss them. 999 F.3d at 446.

defendants not yet sentenced, while withholding that change from defendants already sentenced." *McKinnie*, 24 F4th at 587 (internal quotation marks omitted) (quoting *Dorsey v. United States*, 567 U.S. 260, 280 (2012)). Thus, it is ordinary, rather than extraordinary, for a defendant to be unable to benefit from Section 401(a)'s nonretroactive changes to § 841(b)(1)(A). *See e.g.*, *Wills*, 997 F.3d at 688 ("What the Supreme Court views as the 'ordinary practice' cannot also be an 'extraordinary and compelling reason' to deviate from that practice."). Additionally, it is not "compelling" when one considers the need for finality in judgments, which underlies the anti-retroactivity doctrine. *See McKinnie*, 24 F.4th at 587-88.

Orta's alleged rehabilitative efforts do not push his case over the "extraordinary and compelling" threshold. While commendable, they are not unexpected or uncommon for a defendant incarcerated for a considerable amount of time. *See United States v. Martin*, No. 6:06-105-DCR, 2021 WL 134602, at *2 (E.D. Ky. Jan. 13, 2021) ("[G]ood behavior and education, which are expected of incarcerated individuals, do not constitute 'extraordinary and compelling circumstances' that warrant a sentence reduction."). And as described above, the same is true for his family circumstances, even though they are unfortunate. Finally, the COVID-19 arguments are nonstarters, his age is unremarkable, and the BOP has effectively managed his health, which is not significantly "deteriorating."

These arguments are not grounds for relief individually or in the aggregate. Even if one considers all of them in conjunction with the First Step Act's changes to the relevant sentencing law, the record indicates that extraordinary and compelling reasons do not exist to justify release or a sentence reduction.

**III. Section 3553(a) Factors**

Although the defendant has not presented extraordinary and compelling reasons for relief, the Court will address the § 3553(a) factors. First, the nature and circumstances of the offenses, as well as their seriousness, do not warrant a sentence reduction. *See* 18 U.S.C. § 3553(a)(1)-(2). Orta was part of a national drug trafficking network which distributed methamphetamine manufactured in California to "large buyers" in, at least, Alabama, Tennessee, Georgia, and Kentucky. [*See* Record No. 626, ⁋ 22.] His role "was to guard methamphetamine, assist in delivering it, and pick[] up payments for drugs, when necessary." [*Id.* at ⁋ 21.] The Presentence Investigation Report indicates that this role was extensive, as the defendant was involved in the conspiracy's operations in California, Alabama, and Kentucky. [*Id.* at ⁋⁋ 21-23.] On one occasion, he and another coconspirator personally drove a truck with 15 pounds of methamphetamine to Northern Kentucky for further distribution. [*Id.* at ⁋ 23.]

The 56.5-pound amount of methamphetamine charged in Count 1 represents the amount of methamphetamine transported from California to Kentucky, although "the exact total amount of methamphetamine distributed . . . during the course of this conspiracy will never be known." [*Id.* at ⁋ 31.] The conspiracy was not limited to Kentucky, and the 56.5-pound amount thus fails to fully convey the breadth of its operations. Still, 56.5 *pounds* is a great deal of methamphetamine. And the defendant's role in the conspiracy was significant. The offenses were very serious, and their nature and circumstances do not support a sentence reduction.

The history and characteristics of the defendant, as well as the need to afford adequate deterrence, promote respect for the law, and protect the public from future crimes of the

defendant also do not favor relief. *See* 18 U.S.C. § 3553(a)(1)-(2). Orta was born in Mexico and illegally entered the United States for the first time in 1979. [Record No. 626, ⁋ 58] "He frequently returned to Sahuaro, Mexico, to visit family but in 1991, was deported by the [United States] Immigration & Naturalization Service following [the] separate felony convictions for drug trafficking crimes in California" discussed above. [*Id.* at ⁋ 58.]

Orta unlawfully returned to this country again, only to partake in the large-scale drug trafficking operation that is the subject of this criminal action. He was also convicted in a separate criminal case of illegal reentry and sentenced to 46 months' imprisonment on that charge. *See United States v. Orta-Prado*, No. 98-cr-049-WOB, Record No. 27 (E.D. Ky. Mar. 9, 1999).

The defendant's history demonstrates a complete lack of respect for the law and an inclination toward large-scale drug trafficking despite its legal consequences and the harm that it causes in the community. The sentence imposed is sufficient, but not greater than necessary, to provide specific and general deterrence, promote respect for the law, and protect the public from future crimes of the defendant.

To the extent Orta claims his medical problems mitigate the risk of recidivism, that argument is unconvincing. His health, while declining, has been effectively managed by the BOP. There is no indication that he is incapacitated to the point where he could no longer traffic controlled substances. And although his purported rehabilitative efforts are admirable, they likewise do not alleviate the Court's concerns regarding future drug trafficking activities.

It is not entirely clear whether the defendant claims that an unwarranted sentencing disparity exists for the purposes of § 3553(a)(6) after the amendment of § 841(b)(1)(A) or whether he believes this point to be relevant only to the "extraordinary and compelling

reasons" component of compassionate release. Regardless, this factor does not justify relief for at least two reasons. First, as discussed above, Section 401(a) is not retroactive. Thus, similarly-situated defendants sentenced prior to its enactment remain subject to the same penalties. Second, an alleged sentencing disparity does not require a sentence reduction where, as here, the other relevant § 3553(a) factors heavily weigh in favor of maintaining the original sentence. *See United States v. Lawrence*, No. 21-1285, 2021 WL 4804590, at *3 (6th Cir. Oct. 14, 2021) (unpublished). On balance, the relevant § 3553(a) factors do not support release or a sentence reduction. For this independent reason, Orta's motion must be denied.

## IV. Conclusion

The defendant's motion fails because Orta has not presented extraordinary and compelling reasons for relief. The BOP has effectively managed his medical conditions, his health has not significantly deteriorated, and his age is not particularly advanced. Additionally, the Sixth Circuit has foreclosed relief on COVID-19 grounds where, as here, the defendant can benefit from a vaccine. And at any rate, there is no current, significant risk of contracting the virus at his place of incarceration. Moreover, Orta's family circumstances, while unfortunate, are not extraordinary. Next, Section 401(a) of the First Step Act also cannot serve as a ground for relief under binding Sixth Circuit precedent, but assuming it could, it would not support a sentence reduction in this case.

Finally, the § 3553(a) factors, on balance, continue to support the original sentence imposed. This finding supports the denial of the present motion independent of the Court's "extraordinary and compelling reasons" determination. Accordingly, it is hereby

**ORDERED** that Defendant Lois Orta's motion for compassionate release [Record No. 680] is **DENIED**.

Dated: May 18, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky